**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Twyna Lejean Oliver,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>        Defendant. | No. CV-15-01201-PHX-NVW<br><br>**ORDER** |

Plaintiff Twyna Lejean Oliver seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

Plaintiff was born in November 1963. On her application for supplemental security income, she reported that her ability to work was limited by back pain, high blood pressure, poor vision in both eyes, and depression. She speaks English and completed two years of college. She worked as a union representative 1991-2003 and as a home care provider from September 2006 to February 2007. In this appeal, Plaintiff contends the ALJ erred by failing to find she has a severe mental impairment.

On February 24, 2010, Plaintiff applied for supplemental security income, alleging disability beginning July 24, 2009 (subsequently amended to February 24, 2010). On August 18, 2011, she appeared and testified at a hearing before the ALJ. Although informed of her rights to representation, she chose to appear and testify without the assistance of an attorney or other representative. On September 14, 2011, an unfavorable decision was issued. On June 19, 2013, the Appeals Council remanded for further proceedings. On January 30, 2014, Plaintiff appeared and testified with counsel at a second hearing before the ALJ. An independent vocational expert and an independent orthopedic medical expert also testified. On February 20, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On June 29, 2015, Plaintiff sought review by this Court.

## II.  STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence

is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 416.920(c). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 416.920(e), (f). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 416.920(g). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 24, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, left eye blindness, and hypertension. The ALJ found that Plaintiff's "medically determinable mental impairments of bipolar disorder and post-traumatic stress disorder (PTSD),

considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is able to frequently climb ramps and stairs, but never ladders, ropes or scaffolds. She is able to stand/walk for six to eight hours in an eight-hour workday. She is able to occasionally stoop, kneel, crouch, and crawl. She should avoid heights and moving machinery.

The ALJ further found that Plaintiff is capable of performing past relevant work as a union representative.

## IV.   ANALYSIS

Plaintiff contends the ALJ erred at step two by finding that her medically determinable mental impairments of bipolar disorder and post-traumatic stress disorder are non-severe, *i.e.*, do not significantly limit Plaintiff's ability to perform basic mental work activities. 20 C.F.R. § 416.921. Plaintiff claims the ALJ's determination is not supported by substantial evidence because it rejected the opinion of consultative psychological examiner Ronn Lavit, Ph.D.

Defendant contends any error at step two is harmless because the ALJ found severe physical impairments at step two and subsequently was required to consider the combined effects of Plaintiff's medically determinable impairments, including non-severe mental impairments. Under Defendant's view, the issue is whether the ALJ erred at step four by failing to consider Plaintiff's non-severe mental impairments in the residual functional capacity determination. Regardless of how the issue is framed, resolution turns on whether the ALJ erred by giving little weight to the opinion of an examining physician.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat

the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830. Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

On July 19, 2010, Dr. Lavit performed a psychiatric examination of Plaintiff. Although Plaintiff reported she was being treated at TERROS, the only records Dr. Lavit reviewed were from Saint's Family Medicine Center from before 2007. Plaintiff reported to Dr. Lavit that she was living with a boyfriend, is interested in fishing and listening to jazz music, and has one friend who helps her with housework and laundry. She reported that she has no contact with others and has problems with memory, attention, and concentration. She reported that when she is on medications, she is not depressed, but without medications, she is very depressed. She reported depressive symptoms including poor appetite, but also reported that she overeats and is overweight (5'5" and 200 lbs.). She reported that as long as she is on her medications, she has no problems with anger or anger management. Plaintiff reported that in 2004 she began having panic attacks when she began to run low on medication and, as a result, had to stop working. She reported that in 2007 she was diagnosed with bipolar disorder and was prescribed Paxil and Abilify. Plaintiff also reported that since she was young, she has heard voices, and she sees shadows.

Dr. Lavit observed that Plaintiff was highly interactive and evidenced spontaneity and range in her emotions. She spoke fluent English and did not evidence any word finding or articulation problems. She was able to recall three of three objects in three minutes and spell "world" forward but not backward. She could identify the current President of the United States and perform most of the simple addition and subtraction problems accurately, but said she does not know how to multiply or divide. When asked how many months in a year, she responded, "300." When asked who was Martin Luther King, she responded that she did not know. Dr. Lavit concluded that Plaintiff's cognitive function is in the low average range. Dr. Lavit did not note any evidence that Plaintiff was experiencing auditory or visual hallucinations. He wrote, "She is questionably competent to manage benefit payments in her own behalf."

In his Psychological/Psychiatric Medical Source Statement, Dr. Lavit wrote, "Twyna does not appear able to manage her own funds due to problems with

concentration and attention and ability." He also checked "yes," when asked if she was capable of managing benefits payments. He opined that Plaintiff is able to understand short simple instructions, but not detailed instructions; able to maintain attention and concentration for short periods of time, but not for extended periods; and "not likely to work in close proximity with others as she has hallucinations, panic attacks and depression." Dr. Lavit also opined that Plaintiff is not able to interact appropriately with the public.

The ALJ gave Dr. Lavit's opinion little weight because it was "a one-time snapshot based solely on her comments." Plaintiff contends that Dr. Lavit based his opinion on his observations, not solely on her subjective complaints, but all of the limitations Dr. Lavit found were based on Plaintiff's subjective complaints, not on Dr. Lavit's observations. For example, Dr. Lavit observed that Plaintiff's thoughts were organized and coherent during the meeting, she was highly interactive, and she did not evidence any word finding or articulation problems. Yet he opined that she will have significant impairment if she has to maintain attention and concentration for extended periods of time. Similarly, Dr. Lavit opined that she would not likely work in close proximity to other because she reported that she has hallucinations, panic attacks, and depression—none of which did he observe. The ALJ's reasons for giving Dr. Lavit's opinion little weight—no relationship, one-time examination, supporting evidence provided by the source—are specific and legitimate.

The ALJ considered Dr. Lavit's opinion in the context of Plaintiff's 2010-2013 treatment records from TERROS, which Dr. Lavit did not review. The ALJ noted that treatment records from March 2010 reported that she was successfully treated with medication and could be discharged at any time. Subsequent records showed that Plaintiff continued with medication and case management at TERROS and did not report side effects from the prescribed medications. In July 2012 she reported a trip to Oklahoma to see her grandchildren. In April 2013 she reported plans for another trip to see them. Her Global Assessment of Functioning was repeatedly rated as 75, which is

interpreted as experiencing slight impairment if symptoms are present. The ALJ expressly gave treating sources greater weight than non-treating sources.

The ALJ gave "some weight" to the opinions of Johnathan Zuess, M.D., James Hopkins, M.D., David Yandell, Ph.D., and Robert Estes, M.D., who reviewed the treatment records and Dr. Lavit's examination results and opinion, because their opinions were consistent with other evidence. These reviewing physicians concluded that Plaintiff's alleged psychological impairments are not severe and did not significantly limit her ability to function.

The ALJ did not err in giving little weight to the opinion of Dr. Lavit. The ALJ also did not err by finding Plaintiff's mental impairments are not severe.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 15th day of March, 2016.

Neil V. Wake
United States District Judge